UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERESA GREEN
      Plaintiff,                            Case No. 08-11398

v.                                   DISTRICT JUDGE ROBERT H. CLELAND
                                            MAGISTRATE JUDGE STEVEN D. PEPE

COMMISSIONER OF SOCIAL SECURITY,
      Defendant.
_____/

**REPORT AND RECOMMENDATION**

**I.    BACKGROUND**

Plaintiff brought this action under 42 U.S.C. § 405(g) to challenge a final decision of the Commissioner denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.  Both parties have filed motions for summary judgment, which have been referred pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the following reasons, it is **RECOMMENDED** that Defendant's motion for summary judgment be **DENIED**, Plaintiff's motion be **GRANTED IN PART**, and that this case be **REMANDED** for further administrative proceedings consistent with this Report and Recommendation.

**A.    Procedural History**

Plaintiff applied for DIB on November 10, 2003, alleging that she had been disabled since July 1, 1999 (R. 65-67).  After Plaintiff's claim was initially denied on May 10, 2004, (R. 51-55) a hearing was held on August 21, 2006, before Administrative Law Judge Thomas L. Walters ("ALJ") (R. 376-396).  Plaintiff was represented by her present attorney Mikel E. Lupisella.  Vocational Expert Dr. Donald Hecker ("VE") also testified (R. 392-395).  At the hearing Plaintiff requested the alleged onset date of disability be amended to October 8, 2003,

which was granted by the ALJ (R. 379).

In a January 26, 2007, decision, ALJ Walters concluded that Plaintiff was not under a disability as defined by the Act because Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy (R. 24-37). On February 14, 2008, the Appeals Council denied Plaintiff's request for review (R. 13-16). On February 28, 2008, the Appeals Council again denied Plaintiff's request for review after having received additional evidence, thus making it the final decision of the Commissioner (R. 5-6).

### B. **Background Facts**

#### 1. ***Plaintiff's Hearing Testimony***

Plaintiff was 42 years old at the time of the hearing (R. 381), and had her own apartment, but spent the majority of her time with her sister (R. 380). She graduated from high school, but did not take any college or vocational classes after that. Plaintiff is not married and has no children under the age of 18 (R. 381).

Plaintiff is not currently working, and is receiving no income other than worker's compensation (R. 381). She worked in the past as a pants press operator, waitress, cook and housekeeper (R. 382). She stopped working regularly in October 2003, when she injured her right wrist in a fall at work (R. 383). Plaintiff attempted to go back to work, but was unable to perform the job. Because of the injury, she stated that she has no range of motion in her right wrist, and no strength in her right hand. She cannot open jars, and finds it difficult to write with her right, dominant hand (R. 386-387). Plaintiff cannot carry a gallon of milk with her right hand only, and must use her left to support the weight (R. 387). She has had five surgeries on her right wrist, and was told by her doctors that surgery is no longer an option (R. 391). She also

2

stated that she often must elevate her right hand so she does not feel it "thump" (R. 389).

Plaintiff described herself as a loner. When she is at home she does not like to leave the house, but when she goes out she does not like to go back home (R. 384, 390). She does not sleep well at night, usually getting only one or two hours at a time (R. 385). Plaintiff has a driver's license, but does not drive very often. She only drives by herself when it is absolutely necessary (R. 386). She relies primarily on her sister to do things for her, such as grocery shopping and helping her get dressed (R. 385).

She is taking a number of medications. Some were prescribed by her primary care physician, Rowena Achin, M.D., for psychiatric conditions, but she is not seeing a psychiatrist or psychologist because it is not covered by her insurance (R. 384). Plaintiff is taking medications for high cholesterol, and has arterial stents due to partial blockage (R. 388). She smokes, but is trying to quit. Plaintiff also has a history of drug abuse, but has not used any substances since 2003 (R. 391).

### 2. *Medical Evidence*

Because Plaintiff only challenges the ALJ's evaluation of her mental impairments, and does not allege any error regarding the ALJ's evaluation of her physical impairments, this Report and Recommendation will focus on Plaintiff's mental condition.

On October 8, 2003, Plaintiff fell while at work and fractured her right wrist. She sought emergency room care and her wrist was placed in a splint (R. 256). Between January 14, 2004, and March 3, 2004, Plaintiff attended physical therapy sessions a number of times after being referred by Kenneth Stephens, Ph.D., an orthopedic doctor. Yet, Plaintiff was unable to attend her sessions regularly and there was no significant improvement in her condition (R. 240-249).

On March 18, 2004, Plaintiff underwent a physical residual functional capacity ("RFC")
assessment performed by a state agency physician (R. 263-270).  The examining physician
determined Plaintiff had the following exertional limitations: occasionally lift or carry no more
than 50 pounds; frequently lift or carry no more than 25 pounds; stand or walk for six hours out
of an eight-hour workday; sit for six hours out of an eight-hour workday; and reduced ability to
push/pull or to perform fine and gross manipulation with her right hand (R. 264-266).

On April 6, 2004, Plaintiff underwent a psychological evaluation performed by Steve
Geiger, Ph.D., a licensed psychologist, at the state agency's request (R. 271-275).  Plaintiff told
Dr. Geiger that she has been depressed all of her life, and had been in psychiatric wards since she
was 10 years old.  She had problems getting to and staying asleep, concentration and memory
problems, and loss of interest in life activities.  She also reported feeling hopeless, worthless, and
guilty.  She said she had attempted suicide "probably eight times," the first attempt coming when
she was 10 years old, and the last sometime in 2003.  She denied feeling suicidal on the day of
the evaluation, and her last serious suicidal thoughts had occurred two months prior.

Plaintiff reported that, in 1999, she was diagnosed with ADHD and bipolar disorder, but
could not take her medications because she did not have insurance (R. 271).  She noted Prozac
and Klonopin were helpful (R. 272).  Dr. Geiger noted that Plaintiff complained of panic attacks
since she was in elementary school, and still has them one or two times per day.  During the
attacks she experienced shortness of breath, dizziness, heart palpitations, chest pain, shaking,
sweating, choking, numbness and tingling in her extremities, hot flashes, and fear that she will
die.  She also reported having agoraphobia.  Plaintiff stated that she had a history of cocaine
abuse, but denied ever having a problem with alcohol, prescription drugs or marijuana.  Dr.

4

Geiger noted that Plaintiff was vague about her drug use.  She had two six-month periods in prison for selling drugs and was still being drug tested on parole (R. 273).  Plaintiff reported that she had a chronic pervasive pattern of instability in interpersonal relationships, and had been divorced (R. 272).  She lived with her sister, who does her shopping, laundry, and helps with her financial arrangements, but Plaintiff prepares her own meals and helps with the housekeeping. In areas of daily functioning, Plaintiff reported that she had very little social contact, and characterized herself as a loner.  She reported three to four hospitalizations in psychiatric units and "a great deal of outpatient mental health treatment" but none in the last year (R. 272).

Dr. Geiger observed that Plaintiff was "very hyper and her legs moved constantly."  Her speech was understandable, but she was vague and many of her responses indicated she could not remember her history.  Plaintiff did not appear to be exaggerating or minimizing her symptoms (R. 273).  Dr. Geiger noted that Plaintiff appeared depressed, anxious, hyper, irritable and suspicious.  She was oriented in person, time and place.  Memory testing of Plaintiff showed that she could recall three digits forward and four digits backward, and correctly identify her birth date, but could not remember any of three objects after three minutes, could name only the current president, and could not name the past two governors of Michigan (R. 274).  Dr. Geiger noted that Plaintiff had limited cognitive abilities, in that she stated she had cheated her way through school.  He diagnosed bipolar disorder, ADHD, Panic disorder with agoraphobia, cocaine dependence in sustained full remission and borderline personality disorder.  He assessed her Global Assessment of Functioning ("GAF") score as 50[1], and her prognosis was poor (R.

---

[1] The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning."  AMERICAN PSYCHIATRIC ASSOC., DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, (4th ed. 1994) at

275).

On April 30, 2004, Thomas Tsai, M.D., a state agency psychiatrist, completed a Psychiatric Review Technique Form ("PRTF") after reviewing the record evidence (R. 281-294). Dr. Tsai assessed an organic mental disorder, specifically ADHD; affective disorders, specifically anhedonia or pervasive loss of interest in almost all activities, sleep disturbance, difficulty concentrating or thinking, and bipolar disorder; a personality disorder, specifically borderline personality disorder; and a substance addition disorder, specifically a history of substance abuse (R. 281-282, 284, 288, 289). Dr. Tsai also noted that Plaintiff had mild limitations in her ability to perform activities of daily living, and moderate limitations in maintaining social functioning, and maintaining concentration, persistence and pace, but had no extended episodes of decompensation (R. 291). In addition, Dr. Tsai completed a mental RFC assessment in which he indicated that Plaintiff was able to do unskilled work, but would have moderate impairments in maintaining attention and concentration, accepting instruction and responding appropriately to criticism, performing activities with persistence and pace, and responding appropriately to changes in the work setting due to bipolar disorder, ADHD, borderline personality disorder and a history of substance abuse (R. 277-280).

From September 7, 2005, to June 1, 2006, Plaintiff sought treatment from Dr. Rowena Achin, M.D., four times (R. 326-330). On September 7, 2005, Dr. Achin noted Plaintiff's long history of ADHD, depression/anxiety, bipolar disorder and self-mutilation, as well as her

---

30. It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self of others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *See id.* at 32. A GAF score of 41-50 is indicative of "[s]erious symptoms or any serious impairment in social, occupational, or school functioning." *Id.*

medications which included clonazepam, fluoxetine and Strattera.  Plaintiff stated that she was

unable to concentrate and had a "very bad memory dysfunction" (R. 329).  On October 5, 2005,

Dr. Achin increased Plaintiff's Ritalin dosage to 10 mg twice a day, and also advised her to seek

psychiatric help (R. 328).  On May 1, 2006, Dr. Achin noted that Plaintiff did not see a

psychiatrist or psychotherapist because her insurance would not cover it.  Dr. Achin refilled

Plaintiff's Ritalin and also gave her samples of Requip (R. 327).  On June 1, 2006, Dr. Achin

noted that Plaintiff was still not seeing a psychiatrist because of insurance issues.  She refilled

Plaintiff's Ritalin and also prescribed Depakote (R. 326).

On August 16, 2006, Dr. Achin completed both physical and mental medical source

statements regarding Plaintiff's limitations (R. 324-325).  Dr. Achin noted that Plaintiff's

physical impairments would limit her to lifting/carrying less than ten pounds, stand/walk less

than two hours out of an eight-hour workday, and sit less than six hours out of an eight-hour

workday.  The impairments would also severely limit her ability to push/pull with her upper

extremities, and moderately limit this ability with her lower extremities.  Dr. Achin also

indicated that Plaintiff would be further limited by drowsiness and dizziness, and that the

limitations listed would totally disrupt a regular job schedule with low physical demands (R.

325).  Dr. Achin noted that Plaintiff's mental impairments would cause her to be markedly

limited in her ability to relate and interact with supervisors and co-workers, and deal with the

public, and she would be extremely limited in her ability to understand, remember and carry out

an extensive variety of technical and/or complex job instructions, understand, remember and

carry out simple one-or-two step job instructions, maintain concentration and attention for at

least two hour increments, withstand the stress and pressures associated with an eight-hour work

day and day-to-day work activity, and handle funds.  Dr. Achin also noted that the medications

Plaintiff took for her mental impairments caused drowsiness and mood swings, and that drug

addiction had not or not significantly contributed to the limitations (R. 324).  She estimated her

limitations would disrupt a regular job schedule 160 hours a month (R. 325).

### _Evidence Submitted After the January 26, 2007, Decision to the Appeals Council_[2]

Plaintiff submitted medical records to be considered by the Appeals Council after the

ALJ had rendered his decision (R. 346-375).  The records come from three sources: Sparrow

Health System, Dr. Achin, and Razvan Adam, M.D. (R. 350-375).

On June 26, 2006, Plaintiff underwent cardiac catheterization performed by Duane C.

Berkompas, M.D.  Plaintiff had a number of catheters inserted, and tolerated the procedure well.

Dr. Berkompas' final impression was: 1) normal left ventricular systolic function; 2) two-vessel

coronary artery disease; and 3) successful drug-eluting stent-supported angioplasty of the mid

left circumflex and of the proximal right coronary artery as well (R. 351-352).

On April 27, 2007, Plaintiff underwent a psychiatric assessment at Central Michigan

Community Mental Health Services performed by Dr. Adam, a licensed psychiatrist.  Plaintiff's

chief complaints were mood lability, anxiety, self-harming behavior, depression, occasional

suicidal ideation and insomnia.  Dr. Adam noted that Plaintiff's psychiatric history was

---

[2] Because this evidence was not before the ALJ when he rendered the final decision of
the Commissioner, it cannot be considered for substantial evidence review.  _See Wyatt v. Sec'y of
Health and Human Servs._, 974 F.2d 680, 685 (6th Cir. 1992).  The only purpose for which this
Court can consider this additional evidence is to determine whether this case should be remanded
to the agency pursuant to the sixth sentence of 42 U.S.C. § 405(g).  _Cotton v. Sullivan_, 2 F.3d
692, 695-96 (6th Cir. 1993).  This Court may remand the case if the additional evidence is new
and material, and if there was good cause for failure to incorporate the additional evidence into
the record at a prior hearing.  42 U.S.C. § 405(g) (sentence six); _See Wyatt_, 974 F.2d at 685;
_Casey v. Sec'y of Health and Human Servs._, 987 F.2d 1230, 1233 (6th Cir. 1993).

remarkable for extensive psychiatric treatment, including multiple hospitalizations, multiple

suicide attempts and auditory hallucinations (R. 369).  She had a recent self-cutting episode.  Dr.

Adam's mental status examination revealed that Plaintiff's psychomotor activity was decreased,

and her thinking process was slowed.  She avoided answering most of the questions, instead

letting her sister answer.  She also stated that she would feel suicidal if her disability appeal was

denied.  Dr. Adam noted that Plaintiff was cognitively alert and oriented to place and person, but

had difficulties with locating events in time; her insight was limited; and her judgment was fair

(R. 370).  Dr. Adam diagnosed Plaintiff with bipolar disorder, panic disorder with agoraphobia,

and borderline personality disorder, and gave Plaintiff a GAF score of 30[3] (R. 370-372).

On August 6, 2007, Dr. Achin wrote a letter that gives a brief synopsis of Plaintiff's

physical and mental conditions that prevent her from maintaining gainful employment.  Included

in the physical assessment is a statement that Plaintiff had two myocardial infarctions in the past

year, but did not receive any cardiac rehabilitation because of no insurance coverage and

financial deficiencies (R. 366).  Dr. Achin also noted that Plaintiff is supposed to be taking

clopidogrel to keep her stents from re-stenosing, but she is unable to get a prescription due to

restricted insurance coverage.  Dr. Achin reiterated that Plaintiff's psychiatric illnesses consist of

borderline personality disorder, self-mutilation, bipolar disorder and adult attention deficit

disorder.  She noted that Plaintiff's psychiatric history is remarkable for extensive psychiatric

treatment, multiple hospitalizations and multiple suicide attempts (R. 366).  Also included in the

---

[3] A GAF score of 21-30 indicates that "[b]ehavior is considerably influenced by
delusions or hallucinations or serious impairment in communications or judgement or inability to
function in all areas."  AMERICAN PSYCHIATRIC ASSOC., DIAGNOSTIC AND
STATISTICAL MANUAL OF MENTAL DISORDERS, (4th ed. 1994) at 32.

evidence submitted to the Appeals Council is an interventional radiology discharge instruction

sheet and a list of Plaintiff's medications dated October 4, 2007 (R. 367-368).

### 3.    *Vocational Evidence*

VE Donald Hecker characterized Plaintiff's past work as a pants press operator as an

unskilled occupation performed at a light exertion level; past work as a waitress as semiskilled

with light exertion; past work as a prep cook as unskilled at a light exertion level; and past work

as a motel housekeeper as unskilled at a medium exertion level (R. 393).

ALJ Walters first asked VE Hecker if Plaintiff's past work as a pants press operator

required the use of both hands on a frequent basis.  The VE testified that it would.  The ALJ then

asked the VE to consider an individual of the same age, education, and work experience of

Plaintiff who has the RFC for a range of unskilled light work[4] which is limited by the following

factors: with regard to the right wrist, no lifting or pushing, pulling or grasping greater than five

pounds; no working around machinery or unprotected heights; no use of air or vibrating tools;

and limited contact with co-workers and the public (R. 393).  VE Hecker testified that this

hypothetical person would be able to work as a parking lot attendant, security monitor, or an

inspector of a conveyorized system or extrusion machine.  In total, there are 6,000 of these jobs

in the state of Michigan (R. 393-394).

ALJ Walters then asked VE Hecker to assume that Plaintiff's testimony was credible and

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."  20 C.F.R. § 404.1567(b).

supported by medical evidence.  The VE testified that an individual with ADHD resulting in very poor memory and an inability to concentrate would be precluded from all competitive employment (R. 394).

Plaintiff's counsel asked VE Hecker about a person unable 30% of the time to perform activities within a schedule, maintain regular attendance or be punctual within customary tolerances, which he responded would preclude work (R. 395).

### 4.    *The ALJ's Decision*

ALJ Walters found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2007, and had not engaged in substantial gainful activity since October 8, 2003, the alleged onset date.  He found Plaintiff's severe impairments included bipolar disorder, ADHD, borderline personality disorder, substance abuse disorder (in remission), chronic right wrist scaphoid avascular necrosis, and reflex sympathetic dystrophy (right wrist).  Yet, these impairments did not meet or medically equal the requirements of any impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526) (the "Listing") (R. 29).

ALJ Walters evaluated the functional limitations resulting from Plaintiff's mental impairments in four areas, as required by 20 C.F.R. § 404.1520a.  The ALJ found that Plaintiff's mental impairments caused at most mild limitations of activities of daily living; moderate limitations of social functioning; moderate limitations of concentration, persistence and pace; and no episodes of decompensation (R. 30).  The ALJ noted that although Plaintiff reported having her emotional and psychological illnesses for many years, yet she worked and sustained employment at the same time (R. 32).  He also noted that Plaintiff never sought treatment from a

mental health professional – even if her insurance would not cover it, she could have sought low-cost or subsidized treatment.  Finally, the ALJ noted that Dr. Achin's conclusions regarding Plaintiff's mental impairments were too restrictive and not supported by the weight of the evidence (R. 33).  Among the ALJ's reasons for this conclusion were that it was not clear that Dr. Achin had reviewed Plaintiff's mental health history, she did not note if Plaintiff's history of polysubstance abuse had an impact on her mental health, and that Dr. Achin had never tested Plaintiff for ADHD.

ALJ Walters found that Plaintiff had the RFC to perform unskilled work at the light level of exertion, but could not lift, push/pull, or grasp greater than five pounds with the right dominant wrist.  Additionally, the ALJ found that Plaintiff should not work around machinery or unprotected heights, or use air or vibrating tools, and should have limited contact with co-workers and the public (R. 30).  Based on the evidence of record, the ALJ found that although Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely credible[5] (R. 30-31).  ALJ Walters noted that Plaintiff's daily activities were significant, despite her reported symptoms.  Plaintiff reported that she was able to clean around the house, go grocery shopping, eat and bathe without assistance.  She was also able to prepare meals on a daily basis and can drive a car without anyone

---

[5] ALJ Walters noted that "a careful review of the record does not disclose sufficient objective evidence to substantiate the severity of the symptoms and degree of functional limitations alleged by Mr. Kleve" (R. 33).  It is unclear from the record who Mr. Kleve is, as there are no medical records indicating Plaintiff was treated by a Mr. Kleve, and this is the only instance in the ALJ's decision where his name appears.  It is possible that this is simply a cut-and-paste error on the part of the ALJ.

accompanying her (R. 34).  The ALJ found that, based on the VE's testimony, Plaintiff was incapable of performing past relevant work as a pants press operator, but there were a significant number of jobs in the national economy to which Plaintiff was capable of making a successful adjustment (R. 35-36).  Therefore, ALJ Walters concluded that Plaintiff was not disabled.

II.    ANALYSIS

A.    <u>Standard of Review</u>

In adopting federal court review of Social Security administrative decision, Congress limited the scope of review to a determination of whether the Commissioner's decision is supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Sherrill v. Sec'y of Health and Human Servs.*, 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence has been defined as "[m]ore than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984).

If the Commissioner seeks to rely on vocational expert testimony to carry the burden of proving the existence of a substantial number of jobs that Plaintiff can perform, other than her past work, the testimony must be given in response to a hypothetical question that accurately describes Plaintiff in all significant, relevant aspects.  A response to a flawed hypothetical question is not substantial evidence and cannot support a finding that work exists which Plaintiff can perform.  *See, e.g., Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir.

1987) (a hypothetical question must accurately portray claimant's physical and mental impairments); *Cole v. Sec'y of Health and Human Servs.*, 820 F.2d 768, 775-6 (6th Cir. 1987) (Milburn, J., dissenting) ("A vocational expert's responses to hypothetical questions may constitute substantial evidence only if the questions posed accurately portray the claimant's impairments."); *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987) ("The question must state with precision the physical and mental impairments of the claimant."); *Myers v. Weinberger*, 514 F.2d 293, 294 (6th Cir. 1975); *Noe v. Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975).

### B.      **Factual Analysis**

In her motion for summary judgment Plaintiff argues that she should be granted benefits, or, alternatively, have her case remanded, because the ALJ's hypothetical question to the VE did not accurately portray Plaintiff's impairments (Dkt. #11, pp. 6-16).  Plaintiff also argues that the ALJ improperly discounted Dr. Achin's findings in the mental medical source statement that she completed (Dkt. #11, pp. 14-16).

### 1.      *The ALJ's Hypothetical Question to the VE*

Plaintiff argues that ALJ Walters did not accurately portray her mental impairments to VE Hecker in the hypothetical question (Dkt. #11, pp. 6-14).  As support, Plaintiff cites to the PRTF completed by Dr. Tsai, in which Dr. Tsai reported that Plaintiff was moderately limited in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances (Dkt. #11, p. 14, referring to R. 277).  Notably, the ALJ considered the PRTF completed by Dr. Tsai, and agreed with this assessment in finding Plaintiff had moderate limitations with concentration, persistence and pace (R. 30, 32).

14

Plaintiff contends that ALJ Walters failed to adequately incorporate these limitations into his hypothetical question to the VE.  Although SSR 96-8p requires that the RFC must "assess [claimant's] work-related abilities on a function-by-function basis," there is case law that the ruling "does not require ALJs to produce such a detailed statement in writing."  *Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 547-48 (6th Cir. 2002) (quoting *Bencivengo v. Comm'r of Soc. Sec.*, No. 00-1995, 2000 WL 1929759 (3d Cir. Dec. 19, 2000)) ("Although a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing").  Yet, the ALJ must properly account in his hypothetical question to the VE for any and all limitations that he finds.  A hypothetical question posed to the VE should include specific job-related restrictions, rather than broad limitations or categorical terms.

In  *Bankston v. Comm'r of Soc. Sec.*, 127 F. Supp.2d 820 (E.D. Mich. 2000),  the Court noted that it was reasonable to conclude under the regulations "that a mental deficiency occurring 'often' may not be consistent with substantial gainful employment."  *Id.* at 826.  The Court then determined that under the relevant portion of the PRTF, "often" should logically be defined as fifty percent of the time.  *Id.*at 827.  There, the finding that the claimant "often" had deficiencies of concentration, paired with the uncontested findings of the treating physician that he was disabled, resulted in a judgment of disability and a remand for award of benefits.

Plaintiff argues by analogy to *Bankston* that "moderate" in the ALJ's findings is equivalent to "often" under the Commissioner's prior regulations in effect at the time *Bankston* was decided (Dkt. #11, p. 11).  Under the Commissioner's prior evaluative scale, deficiencies in concentration, and other areas, were rated on a five-level range of frequency: never, seldom, often, frequent, and constant.  C.F.R. § 404.1520a(c)(4) has since been amended to encompass a

15

five-level scale based on severity rather than frequency of the limitation. The current scale rates severity as none, mild, moderate, marked, and extreme. Thus, Plaintiff's argument is that a finding of "moderate" limitations is equivalent to "often", and under *Bankston*, such a limitation necessarily requires a finding that a claimant is disabled or at a minimum a remand because of a flawed hypothetical question.

Yet, since *Bankston* was decided, the Sixth Circuit has held that an ALJ's failure to include in a hypothetical question a PRTF finding that a claimant "often" has difficulty concentrating is not a basis for remand when the hypothetical question adequately describes that claimant's limitations arising from a mental impairment. *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). In *Smith*, the ALJ marked on the PRTF that Smith "often" suffered deficiencies of concentration, persistence or pace, but did not include that finding in the hypothetical question to the VE. Smith, relying on cases similar to *Bankston*, argued for a remand based on that omission. The Sixth Circuit, without citing *Bankston*, held that the hypothetical question asked by the ALJ was adequate. The Court noted that while the ALJ checked a single box in a 1-5 rating scale on a standard psychiatric assessment form,

> the ALJ went beyond this simple frequency assessment to develop a complete and accurate assessment of Smith's mental impairment as *Varley* requires. In particular, the ALJ relied on the testimony of four physicians who characterized Smith's concentration problems as minimal or negligible. The ALJ then translated Smith's condition into the only concrete restrictions available to him – examining psychiatrist Schweid's recommended restrictions against quotas, complexity, stress, etc. – and duly incorporated them into his hypothetical to the vocational expert.

*Id.* at 379.

The Court distinguished several unpublished court cases similar to *Bankston* because the ALJs in those cases did not include the finding that the claimant "often" had difficulty

16

concentrating, nor did they otherwise account for such a limitation. *Id.* Thus, when the ALJ makes a PRTF finding that the claimant "often" has (or has "moderate") problems with concentration, but does not specifically include that limitation in the hypothetical question, the question for a reviewing court is whether the ALJ used adequate alternate concrete job restrictions in the hypothetical question that suitably accommodated the claimant's concentration limitations.

One court has held that a reference merely to "unskilled sedentary work" in a hypothetical question is insufficient to describe and accommodate concentration deficiencies. *Newton v. Chater*, 92 F.3d 688 (8th Cir. 1996). *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004), held that a hypothetical stating "no more than simple one or two-step tasks; no travel outside the workplace; and a reasonable opportunity to receive and make personal telephone calls" failed to "take into account the ALJ's own observation (both in her opinion and in the PRTF) that [claimant] *often* suffered from deficiencies in concentration, persistence, or pace" (emphasis in original). *Keyser v. Barnhart*, No. 03-60078 (E.D. Mich., Sept. 2, 2004) (unpublished), held that a hypothetical question of "unskilled jobs with a low stress level alone" is not sufficient to accommodate a claimant who, under the Commissioner's new regulations, has "moderate limitations with respect to concentration, persistence or pace." This Court in *Bielat v. Comm'r of Soc. Sec.*, 267 F. Supp.2d 698 (E.D. Mich., Apr. 4, 2003) (quoting *Andrews v. Comm'r of Soc. Sec.*, No. 00-75522 (E.D. Mich., Dec. 18, 2001) and citing *Thomczek v. Chater*, 1996 WL 426247 (E.D. Mich. 1996)), has held that a hypothetical question including "unskilled sedentary work" plus the limitation of "jobs low at the emotional stress level" is not sufficient to accommodate a finding of a "marked" limitation in the ability to concentrate or persist at tasks.

17

*Walker v. Barnhart*, 258 F. Supp.2d 693 (E.D. Mich., Mar. 31, 2003), held that the ALJ's hypothetical question to the VE that the claimant could perform only simple, unskilled work did not necessarily take into account the non-exertional limitations imposed by Plaintiff's depressive disorder.

*Bankston* possibly went too far in rewriting the Commissioner's regulations and quantifying "often" having deficiencies in concentration at 50%, which may be too high for "often" or "moderate" concentration limitations.  Yet, even if a moderate deficiency means drifting off task 20%-30% of the time, that would have a significant vocational impact unless quotas are eliminated from the hypothetical question or this limit is otherwise accounted for in the question.  It is difficult to reasonably accept "moderate" meaning anything less than 20%-30% of the time at work.  Thus, "moderate" concentration problems, even if not severe enough under the regulations to meet the listing of impairments for a finding of disability at Step 3 of the Commissioner's sequential evaluation, need to be included or accommodated in some suitable fashion in the hypothetical question at Step 5 of that sequence.  Simply including the hypothetical of unskilled jobs with limited contact with co-workers and the public is not sufficient.  *Smith* found that a hypothetical question that took into consideration "quotas, complexity, stress" was adequate in a case where the record also contained four physicians' opinions which characterized Smith's concentration problems as minimal or negligible.  Here, all the psychiatric evaluations are consistent showing moderate or worse mental impairments, unlike in *Smith*.

In the present case, while finding that Plaintiff is "moderately limited with concentration, persistence, and pace," ALJ Walters' only limitations were with co-workers and the public, and

18

to "unskilled, light jobs" (R. 30, 393).  These parameters are not sufficient, and do not fully

convey Plaintiff's limitations in concentration to the VE.  *See Keyser*, No. 03-60078; *cf. Webb v.*

*Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004).  Plaintiff may be unable to meet quotas,

stay alert, or work at a consistent pace, even at an unskilled job.  In a follow-up question, the

ALJ asked the VE to assume that Plaintiff's testimony was credible.  The VE testified that

Plaintiff's poor memory and inability to concentrate would preclude her from competitive

employment (R. 394).  He later noted such interference 30% of the time would eliminate work

(R. 395).  These hypotheticals seem to credit Plaintiff's credibility and Dr. Achin's opinion more

than ALJ Walters did, or was required to given his reference to her past ability to work with her

longstanding mental impairments and her unwillingness to seek community or other mental

health treatment that would not require insurance.  Nonetheless, the current hypothetical

question relied upon by the ALJ is not adequate on the issue of moderate limitations of

concentration, persistence and pace.  Nor can this Court determine the number of the parking lot

attendant, security monitor, or inspector jobs identified by the VE that would be excluded if

quotas or other aspects related to moderate concentration limitations were added to the

hypothetical question such as a 20% frequency.  Thus, the record is incomplete.

An improper hypothetical question cannot serve as substantial evidence under 42 U.S.C.

§ 405(g), and can result in a remand or reversal.  *Whitmore v. Bowen*, 785 F.2d 262, 263-64 (8th

Cir. 1986); *See also Varley*, 820 F.2d at 779 ("Substantial evidence may be produced through

reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only

'if the question accurately portrays [plaintiff's] individual physical and mental imparments").

*Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994), and *Newkirk v.*

19

*Shalala*, 25 F.3d 316, 318 (6th Cir. 1994), held that it is appropriate for this Court to remand for an award of benefits only when "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." This entitlement is established if "the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Faucher* citing *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). On the present record it cannot be said that "proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." Accordingly, the matter should be remanded to complete the record to determine whether there are a significant number of unskilled jobs that will accommodate Plaintiff's mental impairments.

### 2.   *Opinion of the Treating Physician*

In his decision, the ALJ enumerated five reasons as to why he felt Dr. Achin's opinion was too restrictive (R. 33). Plaintiff argues that the reasons given are insufficient and incorrect.

In general, more weight is given to the opinions of treating physicians. Additionally, if the treating physician's opinion is well-supported by – and not inconsistent with – other substantial evidence of record, it is given controlling weight. 20 C.F.R. § 1527(d)(2). If controlling weight is not given to the treating physician's opinion because it is not well-supported or consistent with other substantial evidence, then the Commissioner will determine what weight is to be given to the opinion based upon the following factors:

(1) the length, frequency, nature and extent of the treatment relationship, including the kind and extent of examination and testing sought from specialists or independent laboratories;

(2) the supportability of the medical opinion based on medical signs and

20

laboratory findings, with better explanations being given more weight, and

whether the opinion includes all of the pertinent evidence as well as opinions of

treating and other examining sources;

(3) the consistency of the opinion with the record as a whole;

(4) specialty, with greater weight given to relevant specialists;

(5) any other factors which tend to support or contradict the opinion.

20 C.F.R. §§ 1527(d)(2)-(6).

Here, the ALJ found that Dr. Achin's opinion was too restrictive and not supported by

the weight of the evidence (R. 33, referring to R. 325-326).  The Sixth Circuit has held that "the

Secretary is not bound by the treating physician's opinions, and that such opinions receive great

weight only if they are supported by sufficient clinical findings and are consistent with the

evidence."  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (quoting *Bogle v.

Sullivan*, 998 F.2d 342, 357-48 (6th Cir. 1993)).  ALJ Walters noted that Dr. Achin did not

indicate that she had reviewed Plaintiff's medical history regarding her mental health conditions

and treatment, and points out that Dr. Achin had only seen Plaintiff four times before she

completed the mental medical source statement (R. 33, 35).  The ALJ also compared Dr. Achin's

assessment to that of Dr. Tsai, and noted that the limitations placed on Plaintiff by Dr. Achin

were much more restrictive than those of the state agency psychiatrist who concluded Plaintiff

could do unskilled work (R. 279).  The ALJ stated that, regardless of Plaintiff's longstanding

mental impairments, she had been able to sustain regular full-time employment, and that the

evidence did not indicate Plaintiff was prone to decompensation.  The ALJ also pointed out that

Dr. Achin is a general practitioner and not a mental health specialist, she never tested her for

21

ADHD and simply accepted Plaintiff's self-report (R. 33). The ALJ's reasoning is consistent

with the factors in 20 C.F.R. § 1527(d). Accordingly, ALJ Walters did not improperly discount

Dr. Achin's opinion that Plaintiff's mental impairments were disabling from all work.

### 3.      *Evidence Submitted to the Appeals Council*

In conjunction with her request for review of the ALJ's decision by the Appeals Council,

Plaintiff presented evidence to the Appeals Council. The evidence, which was submitted to the

Appeals Council which then denied review, cannot be used to reverse the Commissioner's

decision on appeal. While the new evidence becomes part of the administrative record, it is the

ALJ's decision that is then under federal court review, and the evidence cannot be used to

reverse the decision, because it was not before the ALJ. *Cotton*, 2 F.3d at 696, citing *Willis v.

Sec'y of Health and Human Servs.*, 727 F.2d 551, 553-54 (6th Cir. 1984) (the record is closed at

the administrative law judge level). Where a party presents new evidence on appeal to the

Appeals Council that denies review or to the federal court for the first time, the Court can

consider the evidence only to determine if a remand is appropriate under sentence six of 42

U.S.C. §405(g) for further consideration of the evidence, but only if the party seeking remand

shows that the new evidence is material. In this case, Plaintiff has not provided this Court with

an argument for a sentence six remand.

Here because of the error in the hypothetical, a remand is necessary under sentence four

of § 405(g). In such a situation where a remand is necessary courts can direct the ALJ to

consider relevant medical evidence not considered earlier even though there is no separate "good

22

cause" showing for the evidence not earlier being submitted.[6]  *See e.g. Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993), which involved a Step 4 determination that the claimant could perform past work.  The Commissioner agreed in the response brief that there had been a legal error in the ALJ not having made a residual functional capacity assessment in his Step 4 denial of benefits.  While agreeing that a remand was in order to undertake further administrative proceedings, the Commissioner wanted to exclude the claimant from presenting any new evidence.  The district court had denied plaintiff's request to remand to have additional evidence considered.  In reversing and remanding the case, the Seventh Circuit held:

> we are remanding pursuant to sentence four, not sentence six. [FN2] Any additional relevant evidence Campbell desires to submit, however, should be considered on remand.
>
> FN2. **Indeed, we do not think that the additional evidence alone would warrant a remand.** A remand to consider additional evidence is appropriate if the evidence is new, material and there is good cause for not introducing it during the administrative proceeding. *Sears v. Bowen*, 840 F.2d 394, 399 (7th Cir. 1988). The evidence consists of three letters: two from doctors who have treated Campbell's physical disorders on numerous occasions and one from a social worker addressing Campbell's treatment for psychological problems. We note initially that Campbell did not object to the magistrate judge's recommendation and report rejecting a sentence-six remand. Even if he had not waived the argument, however, **we agree with the magistrate judge that Campbell could and should have obtained the letters while the case was still subject to administrative review.** *See Anderson v. Bowen*, 868 F.2d 921, 927 (7th Cir. 1989).

*Campbell*, 988 F.2d at 745 (emphasis added).

The Sixth Circuit made a similar ruling although not specifically addressing it.  In *Wilson v. Sec'y of Health and Human Servs.*, 733 F.2d 1181, 1184 (6th Cir. 1984), the Court indicated

---

[6] *Melkonyan v. Sullivan*, 501 U.S. 95 (1991), noted that Congress, while placing additional limitations on sentence six remands under 42 U.S.C. § 405(g), did not intend "to limit a District Court's ability to order remands under sentence four." *Id.* at 101.

the administrative hearing was in or about June 1981.  It noted that records from a November

1981 Cleveland Clinic admission met the good cause standard for a remand under sentence six of

§ 405(g) because they were unavailable at the time of the hearing.  *Ibid.*  Yet, the court also

allowed a surgeon's May 12, 1980, report to be considered without a separate showing of good

cause for not earlier submitting this report that *was* available prior to the administrative hearing.

Accordingly, the ALJ on remand shall consider the additional evidence on Plaintiff's

mental impairments submitted to the Appeals Council.

### III.   RECOMMENDATION

For the reasons stated above, it is **RECOMMENDED** that Defendant's motion be **DENIED**,

Plaintiff's motion be **GRANTED IN PART**, and that this case be **REMANDED** for further

administrative proceedings consistent with this Report and Recommendation.  The parties to this

action may object to and seek review of this Report and Recommendation, but are required to

file any objections within 10 days of service, as provided for in 28 U.S.C. § 636(b)(1) and Local

Rule 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of

appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Sec'y of*

*Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues

but fail to raise others with specificity will not preserve all the objections a party might have to

this Report and Recommendation.  *Willis v. Sullivan*, 931 F.2d at 401; *Smith v. Detroit Fed'n of*

*Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2),

any objections must be served upon this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any

objection must recite precisely the provision of this Report and Recommendation to which it

24

pertains.  Not later than 10 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines any objections are without merit, it may rule without awaiting the response to the objections.

Dated: June 30, 2009                               s/ Steven D. Pepe
Ann Arbor, MI                                       United States Magistrate Judge

Certificate of Service

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on June 30, 2009.

s/Jermaine Creary
Interim Case Manager